```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
                                                                :
LEVI HUEBNER,                                                   :
                                                                :
                              Plaintiff,                        :        REPORT AND
                                                                :        RECOMMENDATION
                 -against-                                      :
                                                                :        19-CV-5747 (EK) (PK)
NISSAN SHAPIRO LAW P.C.,                                        :
                                                                :
                              Defendant.                        :
--------------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

      Levi Huebner ("Plaintiff" or "Huebner") brought this action against Nissan Shapiro Law P.C. ("Defendant"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"). (*See* Compl., Dkt. 1.) Before the undersigned on referral from the Honorable Eric R. Komitee is Defendant's motion to vacate an entry of default (the "Motion"). (Dkt. 27.) For the reasons stated herein, the undersigned respectfully recommends that the Motion be GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

      Defendant is a law firm. On behalf of landlord Yuda Silverstein, it sent a letter dated October 10, 2018 (the "Three Day Notice") to Plaintiff as "Tenant" and Elie Poltorak as "Occupant," demanding payment of late rent and late fees. (*See* Compl. ¶¶ 9-11; Ex. A to Compl., Dkt. 1-1.) The Three Day Notice also demanded payment of "Legal Fees" in the amount of $200.00. (*See* Compl. ¶ 12; Ex. A to Compl.) Defendant's name, address, and telephone number appear on the bottom of the Three Day Notice, with its address listed as "1402 Avenue J, Basement, Brooklyn, New York 11230" (the "Avenue J Address"). (*See* Ex. A to Compl.)

      On October 10, 2019, Plaintiff filed the Complaint, on behalf of himself and a putative class of "all persons whom Defendant's records reflect resided in the State of New York and who were

sent a 'Three Day Notice' in substantially the same form as the one sent to the Plaintiff …." (Compl. ¶¶ 40-41.) Plaintiff alleged that legal fees were not expressly authorized by New York law or an agreement between the parties, and, therefore, Defendant's attempt to collect them was in violation of the FDCPA, 15 U.S.C. §§ 1692e and 1692f. (*See* Compl. ¶¶ 13-18, 20.) Plaintiff also alleges that the Three Day Notice contained a defective validation notice in violation of 15 U.S.C. § 1692g. (*See* Compl. ¶¶ 21-28.)

On November 12, 2019, Plaintiff served the Complaint on Defendant via the New York Secretary of State. (Dkt. 7.) Defendant failed to appear, and the Court ordered Plaintiff to show cause why he had not requested a certificate of default. (Order dated Dec. 27, 2019.) On January 6, 2020, Plaintiff requested a certificate of default and adjournment of the initial conference that was scheduled for January 8, 2020. (Dkts. 9, 10.) The Court adjourned the initial conference *sine die* and directed Plaintiff to file his anticipated motion for default judgment by February 20, 2020. (Order dated Jan. 7, 2020.) On January 10, 2020, the Clerk of Court entered a certificate of default against Defendant. (Dkt. 11.)

On February 20, 2020, Plaintiff requested an extension of time until February 25, 2020 to file his motion for default judgment (Dkt. 12), which the Court granted (Order dated Feb. 21, 2020).

On February 25, 2020, instead of filing a motion for default judgment, Plaintiff filed a motion for leave to conduct class discovery and move for class certification. (Dkt. 13.) The Court held a conference on Plaintiff's motion, at which Plaintiff's counsel appeared, but Defendant did not make an appearance.[1] (Min. Entry dated Mar. 13, 2020.)

The Court ordered Plaintiff to file a brief in support of his motion for class discovery and to serve a copy of the brief on Defendant. (*Id.*) On April 30, 2020, Plaintiff requested an extension of time to file the brief (Dkt. 14), which the Court granted (Order dated May 1, 2020).

---

[1] There is no record that Defendant was notified of the conference.

On May 7, 2020, Plaintiff filed his Memorandum of Law in Support of Conducting Class Discovery Prior to Moving for Default Judgment. (Dkt. 15.) At the end of the document, there is a notation that it was mailed via first-class mail to Defendant at the Avenue J Address. (*Id.* at 5.)

The Court granted Plaintiff's motion for discovery and set a deadline of July 30, 2020 to complete discovery. (Order dated May 11, 2020.)

Plaintiff then filed six requests for extensions of time to complete class discovery, on July 30, 2020, September 30, 2020, November 30, 2020, January 29, 2021, March 30, 2021, and June 1, 2021, each time stating that, "[d]ue to the Covid-19 crisis," which has prevented "access to the civil court records room," Plaintiff was left with "no other means of conducting class discovery." (Dkts. 16 at 2, 17 at 2, 18 at 2, 19 at 2, 20 at 2, 21 at 2.) In the last two requests, Plaintiff's counsel also cited health issues of co-counsel (Dkt. 20 at 2), and deaths of counsel's family members (*id.*; Dkt. 21 at 2).

In his January 29, 2021 request, Plaintiff also requested leave to serve Defendant at its email address (Dkt. 19 at 2), which the Court granted (Order dated Jan. 29, 2021).

The Court granted all of Plaintiff's requests for extensions of time to complete class discovery. (Orders dated July 31, 2020, Oct. 1, 2020, Dec. 1, 2020, Jan. 29, 2021, Mar. 31, 2021, June 3, 2021.) In granting the sixth request, the Court also scheduled a conference for June 16, 2021 and ordered Plaintiff to serve a copy of its Order on Defendants "by email and first-class mail to Defendant's last known address." (Order dated June 3, 2021.) There is no indication that Plaintiff did so, and neither party appeared on June 16, 2021. (Min. Order dated June 17, 2021.)

The Court rescheduled the conference for June 23, 2021 and once again directed Plaintiff to notify Defendant of the conference date, and for the first time, directed Plaintiff to file proof of service, writing, "**Plaintiff is directed to serve a copy of this Order on Defendant by email and first-class mail to Defendant's last known address and file proof of service on the docket by June 18, 2021**." (*Id.* (emphasis in original).) On June 21, 2021, Plaintiff filed a sworn affirmation by

3

his counsel stating that on June 18, 2021, he sent Defendant a copy of the Court's Order by email and by first-class mail to the Avenue J Address and an address at 1445 38th Street 1402, Brooklyn, NY 11218. (Dkt. 22 at 1.)

At the status conference on June 23, 2021, counsel for Defendant appeared for the first time and requested leave to enter a notice of appearance and to file a motion to vacate the entry of default. (*See* Min. Order dated June 23, 2021.) The Court granted defense counsel's requests, set a briefing schedule, and stayed all discovery and motion deadlines pending resolution of Defendant's motion to vacate. (*See id.*) Defendant filed the Motion on July 28, 2021 (Dkt. 27), and Plaintiff filed an opposition on August 23, 2021 ("Pl. Opp.," Dkt. 30).

## **DISCUSSION**

**I.     Legal Standard**

A litigant may seek to vacate an entry of default pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, which provides that an entry of default may be set aside for "good cause." Fed. R. Civ. P. 55(c). The Second Circuit has "established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *see also Bricklayers & Allied Craftworkers Local 2 Pension Fund ex rel. O'Sick v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015).

When the question is one of setting aside an entry of default—as opposed to a default judgment—these factors are assessed less rigorously, because there are fewer concerns about "the concepts of finality and litigation repose." *Enron Oil*, 10 F.3d at 96; *see also Sream Inc. v. Saakshi Enters. Inc.*, No. 16-CV-1408 (NG)(RML), 2017 WL 2633510, at *2 (E.D.N.Y. June 15, 2017) ("Importantly, the standard for vacating an entry of default pursuant to Rule 55(c) … is less rigorous than vacating a

4

default judgment pursuant to Rule 60(b)." (emphasis in the original)). Furthermore, a court "must resolve all doubts in favor of the party seeking to vacate the certificate of default." *Sream*, 2017 WL 2633510, at *1. Finally, although "[t]he dispositions of motions [to vacate an entry of default] are left to the sound discretion of a district court …," the Second Circuit maintains an "oft-stated preference for resolving disputes on the merits." *Enron Oil*, 10 F.3d at 95.

## II. Analysis

### A. Willfulness

"'[W]illfulness,' in the context of a default, … refer[s] to conduct that is more than merely negligent or careless, but is instead egregious and … not satisfactorily explained." *Bricklayers*, 779 F.3d at 186 (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (second omission in original) (internal quotation marks omitted)). Even a defendant who was "grossly negligent" in failing to answer was not necessarily willful; "[r]ather, the defaulting party must have engaged in deliberate or egregious conduct." *Sream Inc.*, 2017 WL 2633510, at *2. Indeed, "a showing that a default was inadvertent is sufficient … to vacate a default judgment." *Global Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 387 (S.D.N.Y. 2013), *aff'd in part and modified in part*, 612 F. App'x 11 (2d Cir. 2015).

Defendant contends that it was never served with the Summons and Complaint, that it first learned of this matter after receiving "an email" from Plaintiff's counsel, and that upon learning of this matter, it "immediately" retained counsel and entered an appearance. (Defendant's Memorandum of Law in Support, "Def. Mem.," Dkt. 27-1, at 3; *see also* Affirmation of Nissan Shapiro, Esq., "Shapiro Aff.," Dkt. 27-6, ¶ 3.) Defendant further states that although it updated its address with the New York Secretary of State in 2017, the Secretary of State's records do not reflect the update and still listed an erroneous location. (*See* Def. Mem. at 3; Shapiro Aff. ¶ 3.) Nevertheless, when Defendant's principal, Nissan Shapiro, went to its former address listed on the Secretary of State website, no copy of the Complaint was found there. (*See* Shapiro Aff. ¶ 3.)

Plaintiff argues that Defendant does not provide any evidence that the address listed was incorrect or that it took steps to correct it. Plaintiff further argues that Defendant was aware of the purported error in the Secretary of State's records in 2019 but took no steps to correct it. At any rate, Plaintiff argues, Defendant had "actual notice" of this matter because Plaintiff served Court orders and discovery demands on Defendant via the Secretary of State and first-class mail. (*See* Pl. Opp. at 6-8.) Plaintiff also points out that he filed his request for a certificate of default in this case on the docket for a different case against Defendant, *Poltorak v. Nissan Shapiro Law P.C.*, No. 18-CV-7386 (WFK) (MMH) (hereinafter *Poltorak*). (*See id.* at 2.)

The undersigned finds that Defendant's default was not willful. While service on a corporation via the Secretary of State is proper, it is uncontested that the address on file with the Secretary of State for Defendant at the time the Complaint was filed was incorrect. It is also uncontested that the Secretary of State did not send the Complaint to Defendant's correct address.

Mr. Shapiro states that he did update Defendant's address in 2017, but when he checked the website in 2021, the Secretary of State continued to maintain an incorrect address. Even if Defendant knew that the address was still listed incorrectly in 2019 and failed to correct it, there is no indication that Defendant's failure was designed to avoid or obstruct this action. At most, Defendant's failure to ensure that its address was updated, resulting in its failure to receive notification from the Secretary of State, was "merely negligent or careless." *Bricklayers*, 779 F.3d at 186. "The failure of a defendant to update its address with the Secretary of State is, by itself, insufficient to render a default willful." *Llolla v. Karen Gardens Apartment Corp.*, No. 12-CV-1356 (MKB)(JO), 2016 WL 233665, at *2 (E.D.N.Y. Jan. 20, 2016).

There is also no indication that Defendant was hiding its address from Plaintiff, nor does Plaintiff allege intentional concealment. *See Llolla*, 2016 WL 233665, at *3 (lack of concealment weighs against a finding of willfulness). The Avenue J Address was clearly listed for Defendant on the Three

6

Day Notice. (*See* Ex. A to Compl.) Thus, Defendant's business address was made known to Plaintiff before this action was filed.

Plaintiff's argument that Defendant had "actual notice" of the lawsuit is also unconvincing.

The undersigned finds credible Mr. Shapiro's statement under oath that he learned of the Complaint through an email from Plaintiff's counsel, and that he immediately contacted his attorney to request vacatur of the default. (*See* Shapiro Aff. ¶ 3.)

Plaintiff's actions up until that point belie his claim to have given Defendant actual notice. After service of the Complaint via the Secretary of State on November 12, 2019, Plaintiff filed several requests with the Court, but there is no indication that he sent any of these filings to Defendant. (*See* Dkts. 9, 10, 12, 13, 14.) Only when the Court ordered Plaintiff to send Defendant a copy of Plaintiff's Memorandum of Law in support of his motion for class discovery did he finally claim to have sent a copy of a court filing to Defendant's Avenue J Address (*see* Dkt. 15 at 5) and serve it again via the Secretary of State on June 25, 2020 (Dkt. 16-1).

Plaintiff, in his first request for extension of time to complete discovery, informed the Court that he sent a copy of the Court's May 11, 2020 Order and his discovery demands to Defendant at its Avenue J Address on May 15, 2020 and July 1, 2020. (*See* Dkt. 16 at 1.) Such mailings are not supported by an affidavit or declaration under oath. Plaintiff also did not state that he sent a copy of his extension request to Defendant. Similarly, in his second, third, and fourth requests for extension of time, Plaintiff states that he sent a copy of the Court's Orders dated July 31, 2020, October 1, 2020, and December 1, 2020, respectively, to Defendant at the Avenue J Address. (*See* Dkts. 17 at 1, 18 at 1, 19 at 1.) However, Plaintiff does not state when he made those mailings, does not provide any declaration or certificate to that effect, and does not state that he sent copies of his requests to Defendant.

Even after the Court granted Plaintiff's request for leave to serve Defendant by email, Plaintiff

7

did not indicate that he ever mailed or emailed his fifth and sixth requests for extension of time to Defendant.

Only after the Court explicitly ordered Plaintiff to file proof that he notified Defendant of the June 23, 2021 conference by email and mail, did Plaintiff file a sworn statement that he made any direct mailing to Defendant.

A few days after receiving the email notifying Defendant of the conference, Defendant's counsel appeared and requested leave to file a motion to vacate. Defendant has since diligently participated in this litigation, requesting extensions of time to file its motion to vacate, and then timely filing the Motion on July 28, 2021. (*See* Min. Order dated June 23, 2021; Dkts. 24, 25, 26, 27.) Defendant's promptness in responding to the email notification supports a finding that its default was not willful.

Plaintiff's suggestion that somehow his filing of the request for certificate of default <u>on the docket for a different case</u> constituted notice to Defendant is absurd. (*See* Pl. Opp. at 1-2 (stating, "Defendant was served as follows:" and including this filing in the list).) The other putative class action lawsuit, *Poltorak*, was brought by Plaintiff's counsel on behalf of Elie Poltorak, the "occupant" of the premises where Plaintiff was the "tenant," based on the same Three Day Notice dated October 10, 2018. (*Compare* Ex. A to Compl., *with Poltorak* Dkt. 12-5; *see also* Shapiro Aff. ¶ 2 (*Poltorak* "concerned the same letter in dispute, the same issues, and the same defenses, with the same attorneys.").)

When Plaintiff's counsel filed this action, he did not indicate on the Civil Cover Sheet that this case was "related" to the *Poltorak* action, which he also brought, despite their arising from the same set of facts and alleging essentially the same claims. (*See* Dkt. 1-2.) Moreover, the request by Plaintiff for a certificate of default against Defendant was filed on the *Poltorak* docket with the label "Request for Certificate of Default by Elie Poltorak," with no indication that it was, in fact, a request by Plaintiff

8

Huebner in a different case. (*See Poltorak* Dkt. 30.) It was not accompanied by any explanation for why a request by Plaintiff Huebner was being filed in the *Poltorak* case. Adding to the confusion, that request was followed by two filings, both labeled, "Request for Certificate of Default by Elie Poltorak," and attaching a "Corrected Affirmation in Support of Request for Default" and "Corrected Proposed Certificate of Default." (*Poltorak* Dkts. 31, 32.) One of these was again a request by Plaintiff Huebner (*Poltorak* Dkt. 31), but the second was a request by Poltorak for a certificate of default (*Poltorak* Dkt. 32). Both purport to "correct" the original request for certificate of default (*Poltorak* Dkt. 30), and all are labeled on the docket as requests "by Elie Poltorak," with no mention of Plaintiff Huebner. The undersigned would be hard-pressed to conclude that these unexplained, confusing, and contradictory filings somehow put Defendant on notice that a <u>second</u> lawsuit had been brought against it by a different plaintiff arising from the same set of facts.

In addition, since Plaintiff's counsel was actively litigating the *Poltorak* matter against the same Defendant at the same time, actual notice might have consisted of Plaintiff's counsel actually telling Defendant's counsel of this lawsuit and Defendant's apparent default. Instead, Plaintiff chose to use the Secretary of State for indirect service of the Complaint and the Memorandum of Law in support of his discovery motion.[2] It does not appear that Plaintiff made good faith efforts to ensure that Defendant had an opportunity to defend itself.[3]

Accordingly, the undersigned finds that Defendant's default was not willful.

---

[2] In an attempt to argue that Defendant was aware in 2019 that the Secretary of State had its incorrect address, Plaintiff attached a copy of a letter dated February 12, 2019, filed by Defendant in *Poltorak*, to that effect. (*See* Pl. Opp. at 3; Ex. D to Pl. Opp.) However, Plaintiff's counsel would likewise have been aware through this letter that the Secretary of State had an incorrect address for Defendant, and he still decided to serve Defendant via the Secretary of State in November 2019.

[3] It is worth noting that discovery in *Poltorak* closed on August 27, 2019, and Poltorak's request to re-open discovery (*Poltorak* Dkt. 34) was denied on February 13, 2020 (*Poltorak* Dkt. 38). Twelve days later, Plaintiff requested class discovery in this case.

### B. Prejudice to Plaintiff

"[D]elay alone is not a sufficient basis for establishing prejudice" to a non-defaulting party by vacating a default. *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). "To demonstrate prejudice, [a plaintiff] must establish 'that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud or collusion.'" *Global Gold Mining*, 983 F. Supp. 2d at 388 (quoting *Davis*, 713 F.2d at 916).

Plaintiff argues that he commenced this action over 22 months ago, has expended over 40 hours prosecuting this action, has been unable to pursue discovery and class discovery "due to Defendant[']s willful neglect," and "[a]s such, ... is facing the prospect of spoliation of evidence, unavailability of evidence, and the continued vexatious litigation of Defendant." (Pl. Opp. at 9.)

Plaintiff's attempt to blame Defendant for his inability to pursue discovery is inconsistent with his repeated representations to the Court that he has been unable to conduct class discovery because of the COVID-19 crisis and the resulting lack of access to the civil court records room to conduct such discovery. (*See* Dkts. 16 at 2, 17 at 2, 18 at 2, 19 at 2, 20 at 2, 21 at 2.) In addition, Plaintiff does not allege what evidence has been destroyed or will become unavailable, bringing up only the "prospect of" spoliation, without any support. (Pl. Opp. at 9.) Finally, it is unclear what Plaintiff means by "the continued vexatious litigation of Defendant" when Plaintiff is the one who has brought two claims against Defendant and made repeated requests for extensions of time. (*Id.*)

Accordingly, the undersigned finds that vacating the entry of default against Defendant would not result in prejudice to Plaintiff.

### C. Meritorious Defense

A defendant seeking to vacate a default "need only meet a low threshold to satisfy [the meritorious defense] factor." *MD Produce*, 304 F.R.D. at 110. "[A] defense is meritorious if it is good

10

at law so as to give the fact-finder some determination to make. Likelihood of success is not the measure. [Defendant's] allegations are meritorious if they contain even a hint of a suggestion which, if proven at trial, would constitute a complete defense." *Weisel v. Pischel*, 197 F.R.D. 231, 239 (E.D.N.Y. 2000) (internal quotation marks and citations omitted); *accord MD Produce*, 304 F.R.D. at 110.

Defendant argues that the FDCPA applies only to the collection of consumer debt, not commercial debt. (*See* Def. Mem. at 5 (citing, *inter alia*, *Munroe v. Nationstar Mortg. LLC*, 207 F. Supp. 3d 232, 241 (E.D.N.Y. 2016)).) It contends that Plaintiff owes a commercial debt because Plaintiff leased the unit at issue for commercial purposes and paid rent using his law firm's business account. (*See id.*) Plaintiff argues, however, that the lease itself demonstrates that the unit was used as a personal residence. (*See* Pl. Opp. at 9-10.) He also argues that in *Poltorak*, the court "rejected the … argument that the lease is commercial … and accepted a violation in connection with consumer debt." (*Id.* at 5.)

Defendant's contention that Plaintiff owed a commercial debt, if proven, would constitute a complete defense to Plaintiff's claims. Plaintiff's reliance on the decision denying the motion to dismiss in *Poltorak* is inapposite. There, construing all factual allegations in the light most favorable to the plaintiff, the court found that the plaintiff had adequately <u>alleged</u> that he was a "consumer" within the meaning of the FDCPA and that the three-day rent demand notice had been a communication sent in connection with the collection of a debt. *See Poltorak* Dkt. 28 at 1-2. That decision did not conclude that the debt was, in fact, a consumer rather than a commercial debt. Defendant is not foreclosed from proving the nature of the debt in this litigation.

Accordingly, Defendant has sufficiently demonstrated the existence of a meritorious defense.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Defendant's motion to vacate the entry of default be GRANTED.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   March 11, 2022
         Brooklyn, New York