UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LEVI HUEBNER, on behalf of himself and
all other similarly situated consumers,

                Plaintiff,

     v.

NISSAN SHAPIRO LAW P.C.,

                Defendant.

**MEMORANDUM & ORDER**
19-CV-05747 (HG) (PK)

**HECTOR GONZALEZ**, United States District Judge:

      Plaintiff Levi Huebner brings this putative class action seeking to recover money damages from Defendant Nissan Shapiro Law P.C. for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p.  ECF No. 48-1 (Proposed Amended Complaint).  Presently before the Court is Defendant's motion to dismiss the complaint.  ECF No. 39.  For the reasons set forth below, the Court grants the motion.

## BACKGROUND

      Defendant is a law firm engaged in debt collection.  ECF No. 48-1 ¶¶ 4–5.  In September 2018, Plaintiff executed a lease for an apartment in Brooklyn.  *Id.* ¶¶ 1, 8, 19–20.  Shortly thereafter, Plaintiff permitted another individual, Elie Poltorak, to occupy the apartment.  *Id.* ¶ 10.  Plaintiff alleges that his landlord "refused to honor the occupancy of Poltorak" and "orchestrated a scheme to evict Plaintiff for nonpayment."  ECF No. 48-1 ¶ 14.  At some point, Plaintiff failed to pay rent and this debt for non-payment of rent was referred to Defendant for collection.  Plaintiff asserts that the alleged debt for non-payment of rent is a result of the landlord's failure to "deposit[] the [rent] payment that Plaintiff made on October 3, 2018."  *Id.* ¶ 22.

Plaintiff further alleges that on October 12, 2018, Defendant served Plaintiff with a three-day notice ("Three-Day Notice")[1] threatening to evict him for non-payment. *Id.* ¶ 21. According to Plaintiff, the Three-Day Notice demanded "Legal Fees" in the amount of $200 and "threatened to subject Plaintiff to eviction proceedings" unless the legal fees were paid within three days. *Id.* ¶¶ 24–25, 37. Plaintiff alleges that the demand for legal fees violates the FDCPA, because such fees were not expressly authorized by the lease agreement and, therefore, rendered the information in the Three-Day Notice "false, deceptive[,] or misleading." *Id.* ¶¶ 28–29 (citing 15 U.S.C. §§ 1692(e), 1692(f)).

Plaintiff also alleges that the portion of the Three-Day Notice that was required by the FDCPA to inform Plaintiff that he could halt collection of the debt by disputing the debt within 30 days, *see* 15 U.S.C. § 1962g, was rendered misleading because the Three-Day Notice also said that "nothing" would "prevent the undersigned landlord from commencing summary proceedings under the law should you fail to pay as demanded above." ECF No. 48-1 ¶¶ 36–40, 45–47. Plaintiff alleges that this language confused him about whether he had the right preemptively to seek an injunction in state court to prevent his eviction. *Id.* ¶ 42. Plaintiff further alleges that despite "arrang[ing] a new payment" of his rent shortly after receiving the Three-Day Notice, Defendant did, in fact, file a "holdover proceeding" against Plaintiff—although Defendant waited more than 30 days after Plaintiff received the Three-Day Notice before doing so. *Id.* ¶¶ 22–23.[2]

---

[1]     Pursuant to New York Real Property Actions and Proceedings Law § 711, "a summary proceeding may be maintained to remove a tenant from possession for failing to pay the rent owed for the premises after a demand for the rent has been made or at least three days' notice in writing has been given requiring either the payment of the rent or possession of the premises." *Claremont Gardens Assocs., L.P. ex rel. Claremont Gardens Houses, Inc. v. Rivera*, 910 N.Y.S.2d 761 (Table) (N.Y. Just. Ct. 2010).

[2]     "A holdover [proceeding] is brought to evict a tenant or a person in the apartment who is not a tenant for reasons other than simple nonpayment of rent." New York State Unified Court

The complaint does not quantify the damages that Plaintiff supposedly incurred as a result of Defendant's alleged violations of the FDCPA.  Instead, Plaintiff seeks "[s]tatutory damages provided under the FDCPA," "[a]ttorney fees, litigation expenses and costs incurred in bringing this action," and "[a]ny other relief that this Court deems appropriate and just under the circumstances."  ECF No. 48-1 at 12.

On October 10, 2019, Plaintiff filed this action alleging that the Three-Day Notice violated the FDCPA.  ECF No. 1.[3]  Before the case was assigned to this Court, the proceedings were delayed significantly by Defendant's initial default, Plaintiff's delays in seeking a default judgment so that he could purportedly pursue discovery related to a potential motion for class certification, and Defendant's eventual, successful motion to vacate its default.  ECF Nos. 11, 21, 31, 32.  On August 4, 2022, Defendant filed the instant motion to dismiss:  (i) for lack of subject matter jurisdiction on the ground that Plaintiff lacks standing under Rule 12(b)(1); (ii) for failure to state a claim on which relief can be granted under Rule 12(b)(6); and (iii) for judgment on the pleadings under Rule 12(c).  ECF No. 39.  Plaintiff subsequently filed his opposition and a proposed amended complaint on September 22, 2022.[4]  ECF Nos. 48, 48-1.  On October 6, 2022, Defendant filed its reply.  ECF No. 49.

---

System, "New York City Housing Court,"
https://nycourts.gov/courts/nyc/housing/startingholdover.shtml (last visited March 28, 2023).
Plaintiff does not provide any further details about why Defendant initiated the alleged holdover proceeding.  Defendant alleges that "Plaintiff's claims were rightfully adjudicated in landlord tenant court for his failure to pay rent."  ECF No. 39 at 19.

[3]     The Court notes that in December 2018 a separate case was filed in this District against Defendant by Elie Poltorak, the occupant of the apartment Plaintiff rented, similarly alleging that the "Three-Day Notice" violated the FDCPA.  *See Poltorak v. Nissan Shapiro Law P.C.*, No. 18-cv-7386-WFK (E.D.N.Y.).

[4]     The Court will consider the merits of Defendant's motion to dismiss by analyzing the facts as alleged in Plaintiff's proposed amended complaint.  *See Pettaway v. Nat'l Recovery Sols., LLC,*

**LEGAL STANDARD**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  It is well-settled that the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Wewe v. Mount Sinai Hospital*, 518 F. Supp. 3d 643, 647 (E.D.N.Y. 2021).[5]  A lack of standing constitutes a jurisdictional defect and may be addressed through a motion to dismiss for lack of subject matter jurisdiction.  *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020) ("A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and, accordingly, is properly brought under Fed. R. Civ. P. 12(b)(1).").  When a defendant makes a facial challenge to the sufficiency of the allegations in a plaintiff's complaint related to subject matter jurisdiction, rather than offering extrinsic evidence that attempts to rebut those allegations, the Court must still "accept[] the allegations in the complaint as true and draw[] all reasonable inferences in favor of the plaintiff." *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 503 (2d Cir. 2022).

**DISCUSSION**

For the reasons explained below, the Court lacks subject matter jurisdiction over Plaintiff's FDCPA claims because the allegations in Plaintiff's complaint do not amount to a concrete injury sufficient to confer standing.

---

955 F.3d 299, 303–04 (2d Cir. 2020) (holding that "when a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint."); *see also Clarke v. McCabe, Weisburg & Conway, LLC,* No. 22-cv-3289, 2022 WL 3030347, at *1 (E.D.N.Y. Aug. 1, 2022) (considering merits of motion to dismiss by analyzing facts as alleged in plaintiff's proposed amended complaint).

[5]     Unless noted, case law quotations in this order accept all alterations and omit all internal quotation marks, citations, and footnotes.

## I.    Plaintiff Fails to Establish Standing

Defendant asserts that Plaintiff fails to establish Article III standing because he did not sufficiently allege an injury in fact.  ECF No. 39 at 17–19.  Plaintiff argues that Defendant's actions amount to, among other things, a "threat of extortion," harassment, and a breach of contract, all of which resulted in fear, stress, mental anguish, and suffering, and is sufficient to establish standing.  ECF No. 48 at 14–19; ECF No. 48-1 ¶ 34 (Proposed Amended Complaint).  Plaintiff further argues that "subjecting Plaintiff to a holdover proceeding" despite having paid rent, injures Plaintiff because "landlords . . . deny tenancy to anyone who has been subject to a holdover proceeding," and places those tenants on "blacklists."   ECF No. 48 at 17–18; ECF No. 48-1 ¶ 43 (Proposed Amended Complaint).

To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  The Supreme Court has emphasized that a plaintiff must establish standing by demonstrating a "concrete harm" with "a close historical or common-law analogue for their asserted injury," rather than merely a "defendant's violation of [a] statutory prohibition or obligation" established by Congress.  *Id.* at 2204–05.  The Court explained that Congress cannot "enact an injury into existence" simply by passing a statute that affords an otherwise "uninjured plaintiff" the right to sue for statutory damages.  *Id.* at 2205–06.  The Second Circuit has interpreted *TransUnion's* "concrete harm" requirement to mean "that in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm."  *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021).

5

Plaintiff's allegations fail because he has not adequately alleged that he suffered a "concrete, particularized" harm as a result of Defendant's alleged violations of the FDCPA. *TransUnion*, 141 S. Ct. at 2203. Plaintiff's allegation that he suffered "fear, stress, mental anguish, emotional stress, acute embarrassment and suffering," ECF No. 48-1 ¶ 34, as a result of the Three-Day Notice is insufficient to establish a concrete harm. "The alleged harms are not expenses, costs, any specific lost credit opportunity, or specific emotional injuries . . . . [S]tress and confusion—without accompanying physical manifestation—do not suffice for standing." *Gross v. TransUnion*, 607 F. Supp. 3d 269, 273 (E.D.N.Y. 2022) (remanding to state court Fair Credit Reporting Act claims based on insufficient standing allegations); *see also Maddox*, 19 F.4th at 66 ("A perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing."). Plaintiff does not allege that he ever paid the legal fees described in the Three-Day Notice nor that he was evicted from his apartment as a result of that notice, and he does not explain how Defendant's demand for legal fees caused him any financial or physical harm. "As several courts in this district have recognized, the distress or anxiety caused by simply mailing a collection letter, *even if erroneous*, is a far cry from extreme and outrageous conduct required to assert a cognizable claim for emotional harm." *Clarke*, 2022 WL 3030347, at *3 (emphasis added) (dismissing FDCPA claims and denying leave to amend). This is especially true where, as here, Plaintiff was not even living in the apartment from which Defendant threatened eviction and, therefore, could not have experienced the stress that comes with the uncertainty about finding a new place to live.[6]

---

[6]     Although Plaintiff's memorandum of law describes the apartment at issue as Plaintiff's "residence," *see* ECF No. 48 at 16, the proposed amended complaint does not allege that he was residing in the apartment at any point in time, including when Plaintiff received the Three-Day Notice, *see generally* ECF No. 48-1. During a conference scheduled to discuss Defendant's

Plaintiff's attempt to establish a "close historical or common-law analogue" for his alleged injury, *TransUnion*, 141 S. Ct. at 2204, by analogizing Defendant's actions to common law breach of the contractual right of quiet enjoyment, extortion, harassment, and abuse of process, *see* ECF No. 48 at 14; ECF No. 48-1 ¶ 26–27, likewise fails to establish a concrete injury.  "[W]here a key element of the analogous common-law or historical harm is missing, the plaintiff lacks standing." *Kola v. Forster & Garbus LLP*, No. 19-cv-10496, 2021 WL 4135153, at *6 (S.D.N.Y. Sep. 10, 2021) (dismissing FDCPA claims for lack of standing at summary judgment stage).  With regard to the breach of the covenant of quiet enjoyment, "[w]hether the breach of the covenant is alleged as a defense to an action for rent due, or is used as a basis for an action for damages, the determining factor, with few exceptions, is whether the tenant has vacated the premises." *Dave Herstein Co. v. Columbia Pictures Corp.*, 149 N.E.2d 328, 329 (N.Y. 1958); *see also St. Paul Fire & Marine Ins. Co. v. Rivkin*, 110 F. App'x 169, 171 (2d Cir. 2004) (holding that claim for breach of covenant of quiet enjoyment requires showing of "actual or constructive eviction through an ouster or abandonment of the premises").  Plaintiff does not allege that he or the apartment's occupant was evicted from or abandoned the apartment as a result of the Three-Day Notice, and therefore fails to establish that the breach of the covenant of quiet enjoyment is a common law analogue.[7]  Regarding extortion, in New York, it "is only a criminal offense" and, as such, Plaintiff would not be able to assert an extortion claim and therefore cannot analogize it to his alleged injuries or harm.  *See Dorce v. Toyota Fin. Servs.*, No. 19-cv-6008, 2020 WL 6746838, at

---

motion to dismiss, Plaintiff's attorney expressly stated, while Plaintiff was personally present at the conference, that Plaintiff "wasn't living" at the apartment.  ECF No. 42 at 9:23–10:5.

[7]     The complaint merely alleges that Plaintiff "was subjected to a holdover proceeding filed by Defendant" without alleging that he or anyone else was evicted as a result of that proceeding.  ECF No. 48-1 ¶ 23.

*4 (E.D.N.Y. Nov. 17, 2020).  Similarly, "New York does not recognize a claim for civil

harassment" and thus Plaintiff fails properly to allege that civil harassment is a common law

analogue.  *Smith v. Bray*, No. 15-cv-616, 2015 WL 5474183, at *4 (S.D.N.Y. June 24, 2015).

        In his opposition, Plaintiff states, without any factual support, that "in New York City, the

mere being named as a respondent to a holdover proceeding, places the individual on a Tenant

Blacklist that alerts other landlords from offering any apartment to such tenant" and concludes that

because Defendant commenced a holdover proceeding, he necessarily suffered the injury of being

placed on a blacklist.  ECF No. 48 at 1.  As an initial matter, "[P]laintiff . . . is not permitted to

interpose new factual allegations or a new legal theory in opposing a motion to dismiss."  *Uddoh*

*v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017).  Regardless, neither this new

assertion nor the allegations in the proposed amended complaint come close to alleging the

concrete harm necessary to establish standing.  The proposed amended complaint merely alleges,

in wholly conclusory fashion, that the holdover proceeding caused him to suffer the "injury of

being placed on [a] blacklist used by landlords to deny tenancy to anyone who has been subject to

a holdover proceeding." ECF No. 48-1 ¶ 43.  These assertions are insufficient to establish

standing.  Plaintiff does not allege that *his* landlord has in fact placed him on a blacklist, does not

identify a specific blacklist, nor does he allege, most importantly, that he has been denied tenancy

as a result of the alleged blacklisting.[8]  Accordingly, without more, Plaintiff's allegation is a

speculative apprehension of future harm which does not establish standing.  *See Devitt v. Portfolio*

*Recovery Assocs., LLC*, No. 21-cv-5657, 2022 WL 1460278, at *8 (E.D.N.Y. May 9, 2022) (citing

---

[8]      Plaintiff cites to *LNV Corp. v. Amin*, 127 N.Y.S.3d 740, 742 (N.Y. Civ. Ct. 2020) for the
proposition that being placed on a blacklist constitutes "irreparable harm."  As discussed, Plaintiff
does not allege that *his* landlord placed him on such a "blacklist," but rather theorizes on the
possible difficulties that being placed on such a list *could* or *would* present.  ECF No. 48-1 ¶ 43
n.2.

*TransUnion* and finding that the "mere risk of future harm—without allegations that the risk either is imminent or caused separate concrete harms—cannot be the sole basis for standing"). Furthermore, Plaintiff does not allege that he was placed on a blacklist because of the conduct that he claims violated the FDCPA—*i.e.*, Defendant sending the allegedly misleading and confusing Three-Day Notice.  Plaintiff instead alleges that it is a consequence of Defendant's *separate* decision to commence the holdover proceeding.  *See* ECF No. 48-1 ¶ 43.  Accordingly, the violation of the FDCPA is not causally related to Plaintiff's alleged injury.  *See TransUnion*, 141 S. Ct. at 2203 ("If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.").

Moreover, Plaintiff's attempt to analogize Defendant's filing of the holdover proceeding to common law abuse of process likewise fails to establish standing.  With respect to abuse of process, plaintiff must allege three elements:  "(1) [a] regularly issued process; (2) intent to harm the plaintiff without justification; and (3) the perverted use of otherwise legal process to obtain a collateral objective."  *Berisic v. Winckelman*, No. 03-cv-1810, 2003 WL 21714930, at *2 (S.D.N.Y. July 23, 2003).  However, "the mere commencement of a civil action cannot serve as the basis for a cause of action alleging abuse of process*.*"  *Pinkesz Mut. Holdings, LLC v. Pinkesz*, 156 N.Y.S.3d 216, 220 (N.Y. App. Div. 2021).  Here, Plaintiff does not allege that the holdover proceeding was unlawful or without justification.  Instead, he speculates that the filing of such a proceeding could have potentially adverse effects on his ability to seek tenancy elsewhere in the future.  ECF No. 48-1 ¶¶ 23, 43.  These allegations are insufficient to allege abuse of process.

Accordingly, Plaintiff fails to establish a concrete harm or injury, and fails to demonstrate that any alleged deficiencies in the Three-Day Notice are more than a mere "violation of [a] statutory prohibition or obligation."  *TransUnion,* 141 S. Ct. at 2204–05.  In sum, the allegations

in Plaintiff's proposed amended complaint do not establish standing.  Accordingly, Defendant's motion to dismiss is granted because the Court lacks subject matter jurisdiction.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and Plaintiff's claim is dismissed without prejudice to refiling in state court if appropriate.  *See Clarke*, 2022 WL 3030347, at *3 (citing *TransUnion* and noting that state courts may have jurisdiction over certain claims in the absence of Article III standing).[9]  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
March 28, 2023

---

[9]     "While a court should grant leave to amend freely when justice so requires, leave may be denied for good reason, including futility."  *Clarke*, 2022 WL 3030347, at *3.  The Court finds that any amendment would be "futile" because the Court cannot identify additional facts that would cure the defects in establishing standing.  Furthermore, by considering whether the allegations in Plaintiff's proposed amended complaint are sufficient to withstand Defendant's motion to dismiss, the Court has effectively already allowed Plaintiff one opportunity to amend. "[S]ince standing still does not adequately appear from all the materials of the record, the complaint must be dismissed."  *Id.*